# Exhibit A

**60-Day Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act ("Clean Water Act")**



# EDEN

*Eden Environmental Citizen's Group, LLC*

December 8, 2019

<u>Via US Mail, Certified</u>  USPS Tracking No. 9407 1118 9956 1371 2908 85

Massimo Desimoni C.E.O
Channel Lumber Co.
100 West Cutting Boulevard
Richmond, CA 94804

<u>Via US Mail</u>

Karen Genine Rathe
Agent for service
Channel Lumber Co.
100 West Cutting Boulevard
Richmond, CA 94804

**Re:   60-Day Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act ("Clean Water Act")**

To Officers, Directors, Operators, Property Owners/Landlords, and/or Facility Managers of Channel Lumber Co.:

This letter is being sent to you on behalf of Eden Environmental Citizen's Group, LLC ("EDEN") to give legal notice that EDEN intends to file a civil action against Channel Lumber Co. and its corporate officers ("Discharger") for violations of the Federal Clean Water Act ("CWA" or "Act") 33 U.S.C. § 1251 *et seq.,* that EDEN believes are occurring at the Channel Lumber Co. facility located at 100 West Cutting Boulevard in Richmond, California ("the Facility" or "the site").

EDEN is an environmental citizen's group established under the laws of the State of California to protect, enhance, and assist in the restoration of all rivers, creeks, streams, wetlands, vernal pools, and tributaries of California, for the benefit of its ecosystems and communities.

---

2151 Salvio Street #A2-319     Concord, CA  94520
Telephone:  925-732-0960         Email: *edenenvcitizens@gmail.com*
Website:                                       edenenvironmental.org

As discussed below, the Facility's discharges of pollutants degrade water quality and harm aquatic life in the Facility's Receiving Waters, which are waters of the United States and described in Section II.B, below. EDEN has members throughout California. Some of EDEN's members live, work, and/or recreate near the Receiving Waters and use and enjoy the Receiving Waters for surfing, kayaking, camping, fishing, boating, swimming, hiking, cycling, bird watching, picnicking, viewing wildlife, and/or engaging in scientific study.

At least one of EDEN's current members has standing to bring suit against Channel Lumber Co., as the unlawful discharge of pollutants from the Facility as alleged herein has had an adverse effect particular to him or her and has resulted in actual harm to the specific EDEN member(s).

Further, the Facility's discharges of polluted storm water and non-storm water are ongoing and continuous. As a result, the interests of certain individual EDEN members have been, are being, and will continue to be adversely affected by the failure of Channel Lumber Co. to comply with the General Permit and the Clean Water Act.

CWA section 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA section 505(a), a citizen must give notice of intent to file suit. 33 U.S.C. § 1365(b). Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA"), and the State in which the violations occur.

As required by CWA section 505(b), this Notice of Violation and Intent to File Suit provides notice to the Discharger of the violations which have occurred and continue to occur at the Facility. After the expiration of sixty (60) days from the date of this Notice of Violation and Intent to File Suit, EDEN intends to file suit in federal court against the Discharger under CWA section 505(a) for the violations described more fully below.

### I.     THE SPECIFIC STANDARD, LIMITATION, OR ORDER VIOLATED

EDEN's investigation of the Facility has uncovered significant, ongoing, and continuous violations of the CWA and the General Industrial Storm Water Permit issued by the State of California (NPDES General Permit No. CAS000001 [State Water Resources Control Board ("SWRCB")] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Permit") and by Order No. 2014-0057-DWQ ("2015 Permit") (collectively, the "General Permit").

As more fully described in Section III, below, EDEN alleges that in its operations of the Facility, Channel Lumber Co. has committed ongoing violations of the substantive and procedural requirements of the Federal Clean Water Act, California Water Code §13377; the General Permit,

the Regional Water Board Basin Plan, the California Toxics Rule (CTR) 40 C.F.R. § 131.38, and California Code of Regulations, Title 22, § 64431.

## II.     THE LOCATION OF THE ALLEGED VIOLATIONS

### A. The Facility

The location of the point sources from which the pollutants identified in this Notice are discharged in violation of the CWA is Channel Lumber Co.'s permanent facility address of 100 West Cutting Boulevard in Richmond, California.

Channel Lumber Co. Facility is an establishments primarily engaged in sawing rough lumber and timber from logs and bolts, or resawing cants and flitches into lumber, including box lumber and softwood cut stock; planing mills combined with sawmills; and separately operated planing mills which are engaged primarily in producing surfaced lumber and standard workings or patterns of lumber. This industry includes establishments primarily engaged in sawing lath and railroad ties and in producing tobacco hogshead stock, wood chips, and snow fence lath. Facility operations are covered under Standard Industrial Classification Code (SIC) 2421 - Sawmills and Planing Mills, General.

Based on the EPA's Industrial Storm Water Fact Sheet for Sector A – Timber Products Facilities, polluted discharges from operations at the Facility contain bark and wood debris, total suspended solids (TSS), biochemical oxygen demand (BOD), chemical oxygen demand (COD, and oil and grease ("O&G"). Many of these pollutants are on the list of chemicals published by the State of California as known to cause cancer, birth defects, and/or developmental or reproductive harm.

Information available to EDEN indicates that the Facility's industrial activities and associated materials are exposed to storm water, and that each of the substances listed on the EPA's Industrial Storm Water Fact Sheet is a potential source of pollutants at the Facility.

### B. The Affected Receiving Waters

The Facility discharges into a municipal storm drain system, which then discharges to the Francisco Bay ("Receiving Waters").

The San Francisco Bay is a water of the United States. The CWA requires that water bodies such as the San Francisco Bay meet water quality objectives that protect specific "beneficial uses." The Regional Water Board has issued the *San Francisco Bay Basin Water Quality Control Plan* ("Basin Plan") to delineate those water quality objectives.

The Basin Plan identifies the "Beneficial Uses" of water bodies in the region. The Beneficial Uses for the Receiving Waters downstream of the Facility include: commercial and

sport fishing, estuarine habitat, fish migration, navigation, preservation of rare and endangered species, water contact and noncontact recreation, shellfish harvesting, fish spawning, and wildlife habitat. Contaminated storm water from the Facility adversely affects the water quality of the San Francisco Bay watershed and threatens the beneficial uses and ecosystem of this watershed.

Furthermore, the San Francisco Bay is listed for water quality impairment on the most recent 303(d)-list for the following: chlordane; dichlorodiphenyltrichloroethane (DDT); dieldrin; dioxin compounds (including 2,3,7,8- tetrachlorodibenzo-pdioxin); furan compounds; invasive species; mercury; polychlorinated biphenyls (PCBs); PCBs (dioxin-like); selenium, and trash.

Polluted storm water and non-storm water discharges from industrial facilities, such as the Facility, contribute to the further degradation of already impaired surface waters, and harm aquatic dependent wildlife.

### III.   VIOLATIONS OF THE CLEAN WATER ACT AND GENERAL PERMIT

#### A. *Failure to Apply for NPDES Coverage*

The CWA prohibits storm water discharges without a permit. 33 U.S.C. § 1342; 40 C.F.R. § 122.26. The General Permit regulates operators of facilities subject to coverage under the National Pollutant Discharge Elimination System (NPDES) storm water permit, as these operators discharge storm water associated with specific industrial activities identified by both industrial activity and SIC (Standard Industrial Classification) codes in Attachment A of the Permit.

Channel Lumber Co.'s primary industrial activity is listed on Attachment A as an industrial activity subject to NPDES coverage. Thus, the Facility was required to apply for coverage under the Permit in order to commence business operations, pursuant to Section I.Q of the Permit.

According to California Secretary of State records, Channel Lumber Co. commenced its operations at the site on or before July 30, 1956.

Channel Lumber Co. has not in fact yet applied for NPDES coverage.

#### B. *Failure to Develop and Implement an Adequate SWPPP and Site Map*

Channel Lumber Co. has also failed to develop and implement an adequate Storm Water Pollution Prevention Plan ("SWPPP") or Site Map for the Facility that comports with Section X of the General Permit.

Failure to develop or implement an adequate SWPPP is a violation of Sections II.B.4.f and X of the General Permit.

### C. *Failure to Develop, Implement and/or Revise a Monitoring and Reporting Program Pursuant to the General Permit*

Section XI of the General Permit requires Dischargers to develop and implement a storm water monitoring and reporting program ("M&RP") prior to conducting industrial activities. Dischargers have an ongoing obligation to revise the M&RP as necessary to ensure compliance with the General Permit.

The objective of the M&RP is to detect and measure the concentrations of pollutants in a facility's discharge, and to ensure compliance with the General Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. An adequate M&RP ensures that BMPs are effectively reducing and/or eliminating pollutants at the Facility, and it must be evaluated and revised whenever appropriate to ensure compliance with the General Permit.

1. Failure to Conduct Visual Observations

Section XI(A) of the General Permit requires all Dischargers to conduct visual observations at least once each month, and sampling observations at the same time sampling occurs at a discharge location.

Observations must document the presence of any floating and suspended material, oil and grease, discolorations, turbidity, odor and the source of any pollutants. Dischargers must document and maintain records of observations, observation dates, locations observed, and responses taken to reduce or prevent pollutants in storm water discharges.

EDEN believes that Channel Lumber Co. has failed to conduct monthly and sampling visual observations pursuant to Section XI(A) of the General Permit.

2. Failure to Collect and Analyze Storm Water Samples

In addition, EDEN alleges that Channel Lumber Co. has failed to provide the Regional Water Board with annual documented results of Facility run-off sampling as required under Sections XI.B.2 and XI.B.11.a of Order No. 2014-0057-DWQ, in violation of the General Permit and the CWA.

Section XI.B.2 of the General Permit requires that all Dischargers collect and analyze storm water samples from two Qualifying Storm Events ("QSEs") within the first half of each reporting year (July 1 to December 31), and two (2) QSEs within the second half of each reporting year (January 1 to June 30).

As of the date of this Notice, Channel Lumber Co. has failed to upload into the SMARTS database system *any* facility storm water run-off sample analyses.

### D. *Failure to File Annual Reports*

Channel Lumber Co. has failed to comply with Section XVI.A of the General Permit, which provides as follows: "The Discharger shall certify and submit via SMARTS an Annual Report no later than July 15th following each reporting year using the standardized format and checklists in SMARTS."

To date, Channel Lumber Co. has failed to file its Annual Reports for the reporting years 2015-16, 2016-17, 2017-18 and 2018-19.

### E. *Deficient BMP Implementation*

Sections I.C, V.A and X.C.1.b of the General Permit require Dischargers to identify and implement minimum and advanced Best Management Practices ("BMPs") that comply with the Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT") requirements of the General Permit to reduce or prevent discharges of pollutants in their storm water discharge in a manner that reflects best industry practice, considering technological availability and economic practicability and achievability.

EDEN alleges that Channel Lumber Co. has been conducting industrial activities at the site without adequate BMPs to prevent resulting non-storm water discharges. Non-storm water discharges resulting from these activities are not from sources that are listed among the authorized non-storm water discharges in the General Permit, and thus are always prohibited.

Channel Lumber Co.'s failure to develop and/or implement adequate BMPs and pollution controls to meet BAT and BCT at the Facility violates and will continue to violate the CWA and the Industrial General Permit each day the Facility discharges storm water without meeting BAT and BCT.

### F. *Discharges in Violation of the General Permit*

Except as authorized by Special Conditions of the General Permit, Discharge Prohibition III(B) prohibits permittees from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States. Unauthorized non-storm water discharges must be either eliminated or permitted by a separate NPDES permit.

Information available to EDEN indicates that unauthorized non-storm water discharges occur at the Facility due to inadequate BMP development and/or implementation necessary to prevent these discharges.

EDEN alleges that the Discharger has discharged storm water containing excessive levels of pollutants from the Facility to its Receiving Waters during at least every significant local rain event over 0.1 inches in the last five (5) years.

EDEN hereby puts the Discharger on notice that each time the Facility discharges prohibited non-storm water in violation of Discharge Prohibition III.B of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

### G. *Failure to Comply with the Mandates of the Regional Water Board*

Pursuant to Section XIX of the General Permit, Regional Water Boards have general authority to enforce the provisions and requirements of the General Permit, including reviewing SWPPPs, Monitoring Implementation Plans, ERA Reports, and Annual Reports and requiring Dischargers to revise and re-submit PRDs, conducting compliance inspections, and taking enforcement actions.

As of the date of this Notice, Channel Lumber Co. has failed to comply with mandates of the Regional Water Board that it apply for General Permit coverage.

### H. *Failure to Train Employees and Designate a Pollution Prevention Team*

Section X.D.1 of the General Permit requires each Facility to establish a Pollution Prevention Team, who is then responsible for assisting with the implementation of the requirements of the General Permit. The Facility is also required to identify alternate team members to implement the SWPPP and conduct required monitoring when the regularly assigned Pollution Prevention Team members are temporarily unavailable (due to vacation, illness, out of town business, or other absences).

In addition, Section X.H.f of the General Permit requires that each Facility ensure that all of its Pollution Prevention Team members implementing the various compliance activities of the General Permit are properly trained in at least the following minimum requirements: BMP implementation, BMP effectiveness evaluations, visual observations, and monitoring activities. Further, if a Facility enters Level 1 status, appropriate team members must be trained by a QISP.

As of the date of this Notice, Channel Lumber Co. has failed to establish and train a Pollution Prevention Team, in violation of Sections X.D.1 and X.H.f of the General Permit.

Channel Lumber Co. may have had other violations that can only be fully identified and documented once discovery and investigation have been completed. Hence, to the extent possible, EDEN includes such violations in this Notice and reserves the right to amend this Notice, if necessary, to include such further violations in future legal proceedings.

### IV.   THE PERSON OR PERSONS RESPONSIBLE FOR THE VIOLATIONS

The entities responsible for the alleged violations are Channel Lumber Co., as well as its corporate officers and employees of the Facility responsible for compliance with the CWA.

V. **THE DATE, DATES, OR REASONABLE RANGE OF DATES OF THE VIOLATIONS**

The range of dates covered by this 60-day Notice is from at least December 15, 2014, to the date of this Notice. EDEN may from time to time update this Notice to include all violations which may occur after the range of dates covered by this Notice. Some of the violations are continuous in nature; therefore, each day constitutes a violation.

VI. **CONTACT INFORMATION**

The entity giving this 60-day Notice is Eden Environmental Citizen's Group ("EDEN").

Aiden Sanchez
EDEN ENVIRONMENTAL CITIZEN'S GROUP
2151 Salvio Street #A2-319
Concord, CA 94520
Telephone: (925) 732-0960
Email: Edenenvcitizens@gmail.com  (emailed correspondence is preferred)
Website: edenenvironmental.org

EDEN has retained counsel in this matter as follows:

Paul J. Warner
Paul Warner Law
P.O. Box 4755
Arcata, CA 95518
Telephone: (707) 825-7725
Email: pjwlaw@sbcglobal.net

To ensure proper response to this Notice, all communications should be addressed to EDEN's legal counsel, Mr. Paul Warner.

VII. **RELIEF SOUGHT FOR VIOLATIONS OF THE CLEAN WATER ACT**

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for un-permitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), §1362(5).

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Clean Water Act subjects the violator to a penalty for all violations occurring during the period

commencing five (5) years prior to the date of the Notice Letter. **These provisions of law authorize civil penalties of $37,500.00 per day per violation for all Clean Water Act violations after January 12, 2009, and <u>$51,570.00 per day per violation for violations that occurred after November 2, 2015.</u>**

In addition to civil penalties, EDEN will seek injunctive relief preventing further violations of the Clean Water Act pursuant to Sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), declaratory relief, and such other relief as permitted by law.

**Lastly, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d) and California Code of Civil Procedure §1021.5, EDEN will seek to recover its pre and post-litigation costs, including all attorneys' and experts' fees and costs incurred** (see *Southern California Alliance of Publicly Owned Treatment Works v. U.S. Environmental Protection Agency* (9th Cir. 2017) 853 F.3d 1076; *Vasquez v. State of California* (2008) 45 Cal.4th 243).

## VIII. CONCLUSION

The CWA specifically provides a 60-day notice period to promote resolution of disputes. EDEN encourages Channel Lumber Co.'s counsel to contact **EDEN's counsel** within 20 days of receipt of this Notice to initiate a discussion regarding the violations detailed herein. Please do not contact EDEN directly.

During the 60-day notice period, EDEN is willing to discuss effective remedies for the violations; however, if Channel Lumber Co. wishes to pursue such discussions in the absence of litigation, it is suggested those discussions be initiated soon so that they may be completed before the end of the 60-day notice period. EDEN reserves the right to file a lawsuit if discussions are continuing when the notice period ends.

Very truly yours,

AIDEN SANCHEZ
Eden Environmental Citizen's Group

Copies to:

Andrew Wheeler:  Wheeler.andrew@Epa.gov
Administrator, U.S. Environmental Protection Agency

State Water Resources Control Board
Eileen Sobeck, Executive Director
eileen.sobeck@waterboards.ca.gov
Mayumi Okamoto, Office of Enforcement:
Mayumi.Okamoto@waterboards.ca.gov
stormwater@waterboards.ca.gov

Regional Administrator, U.S. EPA – Region 9
Jennifer Pierce:  pierce.jennifer@epa.gov
Laurie Kermish:  Kermish.Laurie@epa.gov